**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In Re:** | **CASE NO.  25-51509-PWB** |
| **COLIANT SOLUTIONS, INC.,** | **CHAPTER 11** |
| **Debtor.** | |

**THIRD AMENDED PLAN OF REORGANIZATION**
**PROPOSED BY COLIANT SOLUTIONS, INC.**

**October 30, 2025**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

Ceci Christy
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Counsel for Debtor*

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND**
**RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE**
**BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR**
**REJECTIONS OF THIS PLAN.**

# ARTICLE I.   INTRODUCTION

CoLiant Solutions, Inc., Debtor and Debtor-in-Possession ("**Debtor**") in the above-captioned bankruptcy case, hereby proposes and files the following Third Amended Plan of Reorganization providing for a reorganization of its debts. This Third Amended Plan of Reorganization (the "**Plan**") should be considered in conjunction with the related Disclosure Statement.

# ARTICLE II.   DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.01** *Scope of Definitions and Rules of Interpretation*. For purposes of the Plan, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Article II of the Plan. Any term used in the Plan that is not defined herein but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

**Section 2.02** *Administrative Claim* shall mean an Allowed Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to § 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving any of the Estate; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under §§ 330(a) or 331 of the Bankruptcy Code; (c) the post-Effective Date costs and expenses of administering the Estate; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**Section 2.03** *Administrative Claims Bar Date* means the first Business Day that is at least 30 days after the Effective Date.

**Section 2.04** *Allowed Claim* shall have the meaning set forth in Section 9.01 of this Plan.

**Section 2.05** *Assets* shall mean all property of Debtor and the Estate as defined in § 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that Debtor or the Estate may have as of the Effective Date or any time thereafter.

**Section 2.06** *Avoidance Actions* shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of Debtor or its Estate under the Bankruptcy Code, including all claims, rights and causes of action arising under § 510 or under any of §§ 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date.

**Section 2.07    *Ballot*** shall mean each of the voting forms that will be distributed by Order of the Bankruptcy Court to Holders of Claims in Classes that are impaired and entitled to vote under the Plan.

**Section 2.08    *Bankruptcy Case*** shall mean the Chapter 11 bankruptcy case of Debtor now pending before the Bankruptcy Court.

**Section 2.09    *Bankruptcy Code*** shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended and applicable to this Bankruptcy Case.

**Section 2.10    *Bankruptcy Court*** shall mean the United States Bankruptcy Court for the Northern District of Georgia or, in the event such Bankruptcy Court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

**Section 2.11    *Bankruptcy Rules*** shall mean: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Bankruptcy Court, all as amended from time to time and as applicable to this Bankruptcy Case or proceedings therein.

**Section 2.12    *Bar Date*** shall mean the last date set by the Bankruptcy Court to file proofs of claim asserting a pre-petition claim, which date was May 21, 2025 for non-government proofs of claim and August 11, 2025 for government proofs of claim.

**Section 2.13    *Business Day*** shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Atlanta, Georgia.

**Section 2.14    *Cash*** shall mean legal tender of the United States of America, or a check entitling the holder to immediate payment thereof.

**Section 2.15    *Causes of Action*** shall mean any and all of Debtor's and the Estate's claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions, and any claims acquired following the Petition Date, including without limitation any such Causes of Action described in the Disclosure Statement.

**Section 2.16    *Claim*** shall mean a claim against Debtor or its Estate, as defined in § 101(5) of the Bankruptcy Code.

**Section 2.17    *Claiming Period*** shall mean a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results.

**Section 2.18    *Claims Litigation*** shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

**Section 2.19    *Claims Objection Deadline*** shall mean the first Business Day that is at least 30 days after the Effective Date.

**Section 2.20    *Class*** shall mean any class into which Claims or Equity Interests are classified under this Plan.

**Section 2.21    *Closing Date*** shall mean the fifth (5th) day after the Confirmation Order has become a Final Order.

**Section 2.22    *Confirmation Date*** shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**Section 2.23    *Confirmation Hearing*** shall mean the hearing on confirmation of the Plan, held pursuant to § 1128 of the Bankruptcy Code.

**Section 2.24    *Confirmation Order*** shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**Section 2.25    *Debtor*** shall mean CoLiant Solutions, Inc. prior to the Closing Date.

**Section 2.26    *Deficiency Claim*** shall mean the Allowed Claim of any secured creditor to the extent that such claim is not a Secured Claim, which shall be treated as a General Unsecured Claim.

**Section 2.27    *Disallowed Claim*** shall have the meaning set forth in Section 9.02 of this Plan.

**Section 2.28    *Disbursing Agent*** shall mean the Reorganized Debtor and Debtor's bankruptcy counsel, the law firm of Rountree Leitman Klein & Geer, LLC, as Reorganized Debtor may designate.

**Section 2.29    *Disputed Claim*** shall have the meaning set forth in Section 9.03 of this Plan.

**Section 2.30    *Distribution*** shall mean a distribution or payment under the Plan to the Holders of Allowed Claims.

**Section 2.31    *Effective Date*** shall mean thirty (30) days from the date of entry of the Confirmation Order.

**Section 2.32    *Equity Interests*** shall mean the interests of the shareholders of Debtor and Reorganized Debtor.

**Section 2.33** *Estate* shall mean the bankruptcy estate created by the commencement of the Bankruptcy Case, both prior to and following the Confirmation Date.

**Section 2,34** *Final Order* shall mean an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

**Section 2.35** *General Unsecured Claim* shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, or is not otherwise separately classified.

**Section 2.36** *Holder* means the person or entity with legal standing to assert rights based on a Claim or Equity Interest, as applicable.

**Section 2.37** *Impaired* has the meaning ascribed to it in § 1124 of the Bankruptcy Code.

**Section 2.38** *Initial Distribution Date* shall mean the first business day which is at least thirty (30) business days after the Effective Date.

**Section 2.39** *Insider* shall have the meaning set forth in § 101(31) of the Bankruptcy Code.

**Section 2.40** *Petition Date* shall mean February 12, 2025, the date on which Debtor filed its Chapter 11 petition, commencing this Bankruptcy Case.

**Section 2.41** *Plan* shall mean this Plan of Reorganization, as it may be modified or amended from time to time pursuant to § 1127 of the Bankruptcy Code.

**Section 2.42** *Priority Claim* shall mean an Allowed Claim entitled to priority pursuant to §§ 507(a)(2) through and including 507(a)(10) of the Bankruptcy Code, but not including Administrative Claims, Professional Claims, or Priority Tax Claims.

**Section 2.43** *Priority Tax Claim* shall mean an Allowed Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**Section 2.44** *Pro Rata Share* shall mean, as to a particular holder of a General Unsecured Vendor Claim in Class 3, the ratio that the amount of such Claim held by the Claimholder bears to the aggregate amount of all General Unsecured Claims in Class 3. Such ratio shall be calculated as if all Disputed General Unsecured Claims asserted against Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise by the Plan.

**Section 2.45    *Professional Claim*** shall mean any Claim based on professional fees held by any party retained pursuant to §§ 327–330 of the Bankruptcy Code.

**Section 2.46    *Record Date*** means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other Final Order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.  The Record Date shall not be later than the Confirmation Date.

**Section 2.46    *Record Holder*** means the Holder of a Claim as of the Record Date.

**Section 2.47    *Reorganized Debtor*** shall mean CoLiant Solutions, Inc., on and after the Confirmation Date.

**Section 2.48    *Scheduled*** shall mean, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest, as set forth in Debtor's Schedules, as amended.

**Section 2.49    *Schedules*** shall mean the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, filed on or about March 10, 2025 [Doc. No. 61], and as amended from time to time in this Bankruptcy Case.

**Section 2.50    *Secured Claim*** shall mean an Allowed Claim secured by a lien on property of the Estate to the extent of the value, as of the Confirmation Date, of such lien as determined by a Final Order of the Bankruptcy Court pursuant to § 506 of the Bankruptcy Code, or as otherwise agreed in writing by the Debtor and the Holder of such Allowed Claim.

**Section 2.51    *Subordinated General Unsecured Claim*** means (i) any Claim, or portion thereof, which is subordinated to the payment of all other General Unsecured Claims (other than Claims which are themselves Subordinated General Unsecured Claims) pursuant to § 510 of the Bankruptcy Code, any other applicable law, any order of the Bankruptcy Court or any applicable agreement, or (ii) any Claim for any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

**Section 2.52    *Unclaimed Property*** means any funds payable to Holders of Claims which are unclaimed.

**Section 2.53    *Unimpaired*** means, with respect to a Class of Claims or Equity Interests, any Class that is not Impaired.

**Section 2.54    *Unsecured Claim*** means an Allowed Claim held by a Creditor of any of Debtor, which is not secured by an interest in any of the property of Debtor's Estate.

## ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 3.01   Introduction**.

(a)   All Claims and Equity Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

(b)   Under the provisions of § 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in §§ 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code (administrative expenses, "gap" claims, and tax claims) may not be designated by Debtor as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article IV of this Plan.

**Section 3.02   Classification**. Claims and Equity Interests are classified as follows:

**Class 1.     Allowed Secured Claim of AFC**

This Class 1 consists of the Allowed Secured Claim of AFC as of September 8, 2025 (the "**Claim Calculation Date**") in the amount of $467,550.67.  This Claim is secured by a blanket lien on all of Debtor's assets as evidenced by AFC's UCC-1 filings and is first in priority.

**Class 2.     Allowed Secured Claim of the SBA**

This Class 2 consists of the Allowed Secured Claim of the SBA in the amount of $1,466,412.52. This Claim is secured by a blanket lien on all of Debtor's assets as evidenced by the SBA's UCC-1 filings and is second in priority to the AFC Allowed Secured Claim.

**Class 3.     Allowed General Unsecured Vendor Creditors**

This Class 3 consists of the Allowed General Unsecured Vendor Creditors which total approximately $7,653,560.11, but this total is not warranted and is subject to adjustment.

**Class 4.     General Unsecured Claim of NewTek**

This Class 4 consists of the Allowed Unsecured Claim of NewTek. NewTek's secured claim will be satisfied by the sale of collateral not owned by Debtor in which it holds a first in priority security interest.  The unsecured claim totals $1,565,281.24.

**Class 5.     Unsecured Claims of River Capital Partners and True Business Funding (the "MCAs")**

This Class 5 consists of the Allowed Unsecured Claims of the MCAs. The MCAs

received substantial payments during the preference period which precludes any payment to them under the Plan.

**Class 6.    Allowed Secured Claims of DLL Finance, LLC and AGCO, LLC (the "Equipment Lenders")**

This Class 6 consists of the Allowed Secured Claims of the Equipment Lenders. The Equipment Lenders hold security interests in and to two UTVs and three bobcats (the "**Equipment**") purchased by Debtor as evidenced by the five Retail Installment Contract and Security Agreements executed by Debtor upon the purchase of the Equipment.

**Class 7.    Unsecured Creditor Convenience Class (the "Convenience Class")**

This Class 7 consists of the Allowed Convenience Class Claims which are claims of General Unsecured Creditors that are $1,000.00 or less. All general unsecured creditors in this Class 7 shall be paid in full within thirty (30) days of the Effective Date. The claims shall be paid by the Buyers (OnView and Keystone).

**Class 8.    Equity Interests**

This Class 8 consists of the Equity Interests of Debtor. On the Closing Date, the current Equity Interests owned by the Stallings shall be sold and transferred to the Buyers and the Reorganized Debtor shall cancel the transferred Equity Interests and issue new Equity Interests to the Buyers in exchange for the Buyers payment of the Purchase Proceeds.

**ARTICLE IV. TREATMENT AND IMPAIRMENT
OF CLAIMS AND EQUITY INTERESTS**

The treatment and impairment of each of the classes of Claims and Equity Interests set forth in Article III and the treatment and impairment of Administrative Claims and Priority Claims are described as follows:

**Section 4.01    Administrative Claims**.

Pursuant to the terms of the Stock Purchase Agreement, certain Administrative Claims shall be paid from the Purchase Proceeds as follows:

**Unpaid Accrued Furloughed Wages.** Debtor's employees who were furloughed postpetition with unpaid accrued wages outstanding shall be paid in full on the Effective Date (the "**Postpetition Furloughed Unpaid Accrued Wages**"). Debtor estimates that these Administrative Claims total no more than $200,000.00. A true and correct copy of the Postpetition Furloughed Unpaid Accrued Wages is attached as **Exhibit "A"** to Debtor's First Amended Plan Reorganization [Doc. No. 131].

**Postpetition Vendor Payables.** Outstanding postpetition vendor payables shall be paid fifty percent (50%) on the Effective Date and the remaining fifty percent (50%) over a one-year period from the Effective Date on a pro rata basis and shall be paid in full no later than November

20, 2026. Debtor estimates that these Administrative Claims total no more than $600,000 (the "**Vendor Admin Claims**").  Debtor's counsel communicated with each postpetition vendor and obtained the vendor's approval to be paid in full in two payments as described herein. Debtor's counsel's Vendor Admin Claims Declaration setting forth these communications is attached to this Plan and incorporated herein as **Exhibit 1**.

**Postpetition Tax Payments.** Debtor anticipates paying outstanding postpetition administrative taxes on the Effective Date of the Plan if known. If not known as of the Effective Date, the taxing authority shall notify Reorganized Debtor within sixty (60) days from the Effective Date of the postpetition administrative tax claim. The taxing authorities are exempt from filing an administrative claim in the Bankruptcy Case. Reorganized Debtor and the taxing authority may extend this time period by their mutual agreement.

**Professional Fees.** Professional fees also are Administrative Claims, which consist of Debtor's counsel's fees and the Creditor Committee's counsel's fees, which shall be paid on the Effective Date of the Plan, unless otherwise agreed to by counsel, from Reorganized Debtor's income or from Buyers. Debtor estimates, but does not warrant, that these professional fees will total approximately $96,000 through the Effective Date of the Plan.

### Section 4.02   Priority Tax Claims.

All Allowed Priority Tax Claims shall be paid in full over a five-year period dating from the Petition Date on a quarterly basis beginning on the tenth (10th) day of the month of the first full quarter after the Effective Date with those equal quarterly payments continuing for sixteen (16) additional quarters with the last quarterly payment being on January 10, 2030 for a total of seventeen (17) quarterly payments with interest accruing at the rate specified under the law of each state for the taxing authority. These quarterly payments shall be paid from Reorganized Debtor's income. In the event Reorganized Debtor recovers any proceeds from the prosecution or settlement of any Avoidance Actions, Debtor may use these proceeds to pay the Allowed Priority Tax Claims on a pro rata basis.

In the event Reorganized Debtor defaults on any payment as stated above, each taxing authority may exercise any and all of its state law remedies including setoff rights to collect the Allowed Priority Tax Claim. In the event Debtor files any past due tax returns, sales tax reporting forms, or employment tax reporting forms that change the amount of a taxing authority's prepetition Priority Tax Claim, the taxing authority shall inform Reorganized Debtor of the change in the Priority Tax Claim, whether that change is an increase or a decrease in the amount of the Allowed Priority Tax Claim.

Notwithstanding the Plan's treatment of each Allowed Priority Tax Claim, nothing herein shall interfere with a taxing authority's state law rights and remedies to collect the Priority Tax Claim should Debtor default on the Plan payments.

Debtor and Reorganized Debtor reserve the right to prepay any Allowed Priority Tax Claim without penalty and to settle any Allowed Priority Tax Claim at any time during the payment

period.  Taxing authorities are exempt from filing an administrative claim for postpetition tax claims.

**Section 4.04    Classes of Claims**

    **4.1    Class 1.  Secured Claim of AFC  - ("AFC Allowed Secured Claim")**

Class 1 consists of the Allowed Secured Claim of AFC which includes the prepetition indebtedness and the postpetition indebtedness balance as of the Confirmation Date. AFC shall be paid in full on the Closing Date of the Stock Purchase Agreement from the Purchase Proceeds. Payment to AFC shall constitute full and final satisfaction of AFC's Claim which constitutes the balance of its Prepetition Debt and postpetition Obligations, as those terms are defined in the DIP Agreement, and any and all reasonable attorney's fees and expenses and all other fees and interest. Upon receipt of this payment, AFC's Claim shall be satisfied in full. As of September 8, 2025, the Claim Calculation Date, the balance of the Prepetition Debt is $354,694.62, the balance of the postpetition Obligations is $29,433.46, and AFC's attorney's fees through August 31, 2025 total $83,422.59. The payoff amount for the AFC Allowed Secured Claim as of September 8, 2025 is $467,550.67.

Within five (5) business days from the Closing Date upon receipt of the final payoff amount, AFC shall cause to be cancelled all UCC-1 Financing Statements recorded against Debtor. AFC shall immediately provide proof of the cancellations to Reorganized Debtor.

Notwithstanding anything else in the Plan to the contrary, the AFC Allowed Secured Claim shall be reduced by any payment received by AFC after the Claim Calculation Date up to the Closing Date.

Class 1 is Impaired and AFC shall vote to accept the Plan.

    **Class 2.    Allowed Secured Claim of the SBA** – ("SBA Allowed Secured Claim")

Class 2 consists of the SBA Allowed Secured Claim. The SBA filed Proof of Claim 13 stating that the balance on the loan between Debtor and the SBA is $1,466,412.52. Debtor entered into a thirty (30) year loan agreement with the SBA on August 5, 2020. Any payments made to the SBA postpetition shall be applied to the Class 2 Claim pursuant to the terms of the underlying loan documents. Debtor shall continue to pay the loan according to its terms under the loan documents from Debtor's operating income.  Should a conflict arise between the Plan and the SBA loan documents, the SBA loan documents shall control. The monthly payments are $7,438.00.

Notwithstanding anything else in the Plan to the contrary, the SBA Allowed Secured Claim shall be reduced by any payment received by the SBA after the Petition Date up to the Closing Date.

Class 2 is Unimpaired and not entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim.

**Class 3.    Allowed General Unsecured Vendor Creditors (the "Unsecured Vendor Class")**

Class 3 consists of the Allowed General Unsecured Vendor Creditors Allowed Claims that will be receive their Pro Rata Share over twenty-four (24) quarters of the Stock Purchase Proceeds from the amount of $1,198,000, beginning on the last day of the first quarter following the Effective Date.

This Class 3 shall receive their Plan payments by check issued from counsel for Debtor, Rountree Leitman Klein & Geer, LLC. The Buyers and/or Reorganized Debtor shall deposit good funds in the amount of at least $49,916.67 each quarter with Rountree Leitman Klein & Geer, LLC no later than thirty (30) days before the last day of each quarter for that quarter's payment. Debtor's counsel shall mail the Pro Rata Share of each quarterly payment to each Class 3 Claimant within twenty (20) days of receipt of the quarterly payment.  Debtor's counsel shall file a report on the docket of the Bankruptcy Case within ten (10) days after every two (2) quarters reflecting payments made to Class 3 for the previous two (2) quarters.  In the event Debtor's counsel does not receive a quarterly payment, Debtor's counsel will notify Cameron McCord, the Unsecured Creditor's Committee counsel, no later than the last day of the quarter in which the payment was due. Ms. McCord may take whatever action she deems appropriate with regard to the failure to fund the quarterly payment.

Debtor estimates, but does not warrant, that the Unsecured Vendor Claims total approximately $7,653,560.11.

Class 3 is Impaired and entitled to vote on the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim.

**Class 4.    Unsecured Claim of NewTek  (the "NewTek Unsecured Claim")**

Class 4 consists of the Allowed Unsecured Claim of NewTek. NewTek filed its Proof of Claim 65 that bifurcates its claim – a $1,000,000 secured claim and a $1,678,503.35 unsecured claim based on a Loan Agreement, Promissory Note, and Security Agreement dated March 31, 2023. The NewTek debt is guaranteed by the Stallings. This debt also was secured by a first in priority security interest in and to a building owned by CoLiant Properties, LLC (the "Building") and by other property owned by the Stallings. The Building sold in September 2025 and NewTek received a payment of $1,113,222.11 from CoLiant Properties, LLC. This payment reduces this Class 4 Claim by $113,222.11. NewTek's Unsecured Claim is no greater than $1,565,281.24. NewTek's remaining unsecured claim will receive zero proceeds from the Plan. No provision of this Plan is intended or shall be construed to release or discharge any guarantor of Debtor. Except as modified herein, all other provisions of the loan documents between the parties remain in full force and effect.

Class 4 is Impaired and entitled to vote on the Plan.

Class 4 has agreed to accept the Plan.

**Class 5.    Unsecured Claims of River Capital Partners and True Business Funding (the "MCA Unsecured Claims")**

Class 5 consists of the Unsecured Claims of River Capital Partners and True Business Funding (the "**MCAs**"). These creditors are the MCAs who purportedly purchased Debtor's accounts receivable in December 2024 and January 2025, respectively.  At the time of these purchases, Debtor's account receivables were wholly encumbered by AFC's security interest dating from 2005, the SBA's purported security interest dating from 2020, and the purported NewTek security interest dating from 2023.  There were no accounts receivable to purchase from Debtor at the time the MCAs paid money to Debtor. As a result, the Class 5 Claims are unsecured. The MCAs shall not receive any distribution under the Plan but shall receive a credit against the amount of the preference payments each of them owes to Debtor.

River Capital Partners filed Proof of Claim 62 asserting a claim in the amount of $371,700.00. It received $90,000.00 in preference payments from Debtor.  Its Pro Rata Share of a Class 3 Distribution is estimated to be $55,755.  River Capital Partners' preference exposure is $34,245 after applying the estimated Plan Distribution.

True Business Funding filed Proof of Claim 63 asserting a claim in the amount of $1,409,005.68. True Business Funding received $589,594.32 in preference payments from Debtor. Its Pro Rata Share of a Class 3 Distribution is estimated to be $211,351.  True Business Funding's preference exposure is $378,243 after applying the estimated Plan Distribution.

On August 27, 2025, Debtor initiated an adversary proceeding against True Business Funding and River Capital Partners with case number 25-05157 (the "**MCA AP**"). Debtor asserts claims to determine the validity, priority and extent of their liens and security interests, avoidance of their liens under § 506(d) of the Bankruptcy Code, avoidance of transfers under § 547 of the Bankruptcy Code, and recovery from them under § 550(a) of the Bankruptcy Code.

Debtor and Reorganized Debtor reserve the right to object to any Claim.

Class 5 is Impaired and is entitled to vote on the Plan.

**Class 6.    Allowed Secured Claims of DLL Finance, LLC and AGCO, LLC (the "Equipment Lenders")**

This Class 6 consists of the Allowed Secured Claims of the Equipment Lenders. The Equipment Lenders hold security interests in and to two UTVs and three bobcats (the "**Equipment**") purchased by Debtor as evidenced by the five Retail Installment Contract and Security Agreements executed by Debtor upon the purchase of the Equipment.  The Equipment Lenders filed proofs of claim asserting their respective secured claims as to the Equipment: AGCO, LLC – Nos. 45, 46, and 47 and DLL Finance, LLC – Nos. 48 and 49.

AGCO, LLC and Debtor entered into the following Retail Installment Contract and Security Agreements:

(i) April 1, 2022 – Bobcat B53621794 – with monthly payments of $269.99 for seventy-two (72) months

(ii) June 1, 2022 - Bobcat UV34D – with monthly payments of $338.03 for seventy-two (72) months

(iii) November 1, 2022 - Bobcat UV34G – with monthly payments of $655.52 for seventy-two (72) months

DLL Finance, LLC and Debtor entered into the following Retail Installment Contract and Security Agreements:

(i) August 15, 2021 – Kioti UTV – with monthly payments of $185.47 for eighty-four (84) months

(ii) August 15, 2021 – Kioti UTV – with monthly payments of $391.31 for seventy-two (72) months

Debtor shall continue making the monthly payments under the terms of each of the agreements with the Equipment Lenders.

Class 6 is Unimpaired and is entitled to vote on the Plan.

**Class 7.        Unsecured Creditor Convenience Class (the "Convenience Class")**

This Class 7 consists of the Allowed Convenience Class Claims which are claims of General Unsecured Creditors that are $1,000.00 or less. All General Unsecured Creditors in this Class 7 shall be paid in full within thirty (30) days of the Effective Date. The claims shall be paid by the Buyers (OnView and Keystone).

Class 7 is Impaired and entitled to vote on the Plan.

Debtor shall serve the Plan and a ballot on these Class 7 creditors on October 13, 2025.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim.

**Class 8.   Equity Interests**

On the Closing Date, the Buyers (OnView and Keystone) will be the sole owners of Debtor. They shall own all the Equity Interests in the Reorganized Debtor. As consideration for this ownership interest, OnView and Keystone will purchase the Stallings' Equity Interests in Debtor for the sum of approximately $2,789,000.00  and these Purchase Proceeds shall fund the Plan and Distributions to Class 1, Class 3, and Class 7 creditors and the Administrative Claims of Debtor's Postpetition Furloughed Unpaid Accrued Wages, the postpetition claims of vendors who rendered services or provided goods postpetition but were not paid, and the Administrative Claims of professionals.

Class 8 is not entitled to vote for the Plan.

## ARTICLE V. MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**Section 5.01   The Stock Purchase Agreement.**

The Stallings and the Buyers (OnView and Keystone) executed the Stock Purchase Agreement that provides for the sale of the Stallings' Equity Interests in Debtor to the Buyers. The Stallings do not receive any proceeds from the sale of their Equity Interests, nor do they retain any Equity Interests in the Reorganized Debtor. The Stallings made this decision to save the company they built and grew together over the past twenty (20) years.

The Stock Purchase Agreement requires the Buyers to pay $2,781,000.00 for the purchase of the Stallings' Equity Interest. Within five (5) days of the Confirmation Hearing, the Buyers shall deposit with the Buyers' counsel, Sherman Rogers, to be held in escrow until the Closing Date the sum sufficient to pay the Class 1 AFC Allowed Secured Claim in full.

All other Distributions to Creditors and Administrative Claimants shall be paid by the Reorganized Debtor as follows: the Postpetition Furloughed Unpaid Accrued Wages on the Effective Date in the approximate amount of $200,000.00; on the Effective Date, half the postpetition administrative vendor payables claims in the approximate amount of $450,000.00 on a pro rata basis and the remaining half of the allowed postpetition administrative vendor payables shall be paid  over one year starting on the Effective Date in the approximate amount of $450,000 on a pro rata basis but no later than November 20, 2026; the Class 3 General Vendor Creditors shall be paid their Pro Rata Share over twenty-four (24) quarters from the total amount of $1,198,000.00. Reorganized Debtor or Debtor's counsel shall act as Reorganized Debtor's Disbursing Agent.

A fully executed copy of the Stock Purchase Agreement is attached to the Amended Plan of Reorganization filed on September 11, 2025 [Doc. No. 131] as **Exhibit B**.

**Section 5.02   Reorganized Debtor**

On the Closing Date, the Reorganized Debtor shall issue new Equity Interests to the Buyers free and clear of all Liens, Claims, interests, and encumbrances in exchange for the consideration specified in the Stock Purchase Agreement.

**Section 5.03   Existence of Reorganized Debtor**

Except as otherwise provided in the Plan, Reorganized Debtor will exist after the Closing Date as a reorganized, separate corporate entity with all the powers of a corporation under Georgia law where Debtor and Reorganized Debtor are incorporated and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Closing Date, as such documents are amended by or pursuant to the Plan.

**Section 5.04    Certificate of Incorporation and By-Laws**

As of the Closing Date, and without any further action by the stockholders or directors of Reorganized Debtor, and to the extent necessary to comply with § 1123(a)(6) of the Bankruptcy Code, Reorganized Debtor's articles of incorporation and by-laws shall be amended and restated, in form and substance consistent with the Plan, to provide for, among other things, the authorization of all acts necessary to implement the Plan, including the issuance of the new Reorganized Debtor's Equity Interests. The officers of the Reorganized Debtor are authorized to file such articles of incorporation and by-laws with the appropriate authority(ies) without shareholder approval or any other action. After the Closing Date, Reorganized Debtor may amend and/or restate its articles of incorporation and by-laws as permitted under applicable law.

**Section 5.05    Reorganized Debtor's Board of Directors; Termination of Existing Officers and Board Members**

The officers and members of the board of directors of Debtor existing immediately before the Closing Date shall be deemed terminated and/or removed without cause effective immediately prior to the Closing Date. Any claim or cause of action arising from the termination or removal of any officer or member of the board of directors shall be deemed waived in consideration for the release and exculpation granted under the Plan.

On the Closing Date, the initial composition of the board of directors of Reorganized Debtor shall consist of the following individuals:  Joel Anaya and Shawn Bhalla.

**Section 5.06    Transactions at Closing**

The following shall occur at or before the Closing, and shall be effective as of the Closing Date:

**(a) Closing of the Stock Purchase Agreement**

The Stallings and the Buyers shall consummate all transactions required to occur at or before the closing of the Stock Purchase Agreement, including:

(i)      On the Closing Date, the Stallings shall execute a Bill of Sale and Transfer Agreement selling and transferring their 100% Equity Interests in Debtor to Buyers. Reorganized Debtor shall cancel the Stallings' transferred stock and shall issue to Buyers new stock in Reorganized Debtor;

(ii)     The Stallings shall deliver to Buyers all licenses, including but not limited to all business licenses and all state licenses for the installation and maintenance of security devices, fire alarms, cameras, all other monitoring devices, and similarly regulated devices, permits, contracts, and business registrations.

(iii)    Within five (5) days of the Confirmation Hearing, the Buyers shall deposit with the Buyers' counsel, to be held in escrow until the Closing Date, the sum sufficient to pay the Class 1 AFC Allowed Secured Claim in full. On the Closing Date, the Buyers' counsel shall wire the escrowed sum to AFC's counsel. On the Effective Date, the Disbursing Agent shall send checks to satisfy the Postpetition Furloughed Unpaid Accrued Wages. On the Effective Date of the Plan, the Disbursing Agent shall send checks to satisfy the allowed postpetition vendor creditors their Pro Rata Share of $450,000 for unpaid postpetition payables.

**(b)    Execution of Documents and Corporate Action**

The Stallings, the Buyers, Debtor, and any other necessary party, as applicable, shall deliver all documents and perform all actions reasonably contemplated regarding the implementation of the Plan and the Stock Purchase Agreement. The Stallings are authorized (i) to execute on behalf of Debtor, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of Debtor to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of Debtor or corporate action to be taken by or required of Debtor will, as of the Closing Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken before the Closing Date, ratified in all respects without any requirement of further action by any stockholder, creditor, or director of Debtor.

**(c)    Amendment of Reorganized Debtor's Governance Documents**

Reorganized Debtor's articles of incorporation and bylaws shall, to the extent required under § 1123(a)6) of the Bankruptcy Code, be amended consistent with the Plan and all necessary action shall be taken to provide for provisions, terms, and conditions necessary to comply, conform with and implement the terms, conditions, and requirements of the Plan.

**Section 5.07    Parties Responsible for Implementation of the Plan**. After the Court's entry of the Confirmation Order, the Reorganized Debtor will be responsible for implementing the Plan. The Reorganized Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtor will also file the necessary final reports and will apply for a final decree as soon as practical after substantial consummation and the completion of the claims analysis and objection process.

**Section 5.08    Funding of Plan**. The Distributions contemplated by this Plan shall be made from the Purchase Proceeds paid by the Buyers, OnView and Keystone, under the terms of the Stock Purchase Agreement and from Reorganized Debtor's income.

**Section 5.09    Disbursing Agent**. The Reorganized Debtor is authorized to make Distributions pursuant to this Plan and maintain bank accounts in the ordinary course of business or to designate

any person or entity to do so on its behalf. The Reorganized Debtor may also pay the ordinary and necessary expenses of administration related to implementation of the Plan in due course.

**Section 5.10    Retained Actions**. On the Effective Date, pursuant to § 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, all Causes of Action (including Avoidance Actions) that Debtor or the Estate had or had power to assert immediately prior to the Confirmation Date, shall become property of the Reorganized Debtor.

**Section 5.11    Settlement of Claims**. The Reorganized Debtor shall be authorized to resolve objections to Claims and enter into settlements and stipulations regarding the amount of Allowed Claims without notice or further order of the Bankruptcy Court.

**Section 5.12    Exclusive Right to Modify Plan**. Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date.

**Section 5.13    Effectuating Documents; Further Transactions**. Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 5.14    Further Authorization**. Debtor and the Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary or desirable to carry out the intentions and purposes and to give full effect to the provisions of this Plan.

**Section 5.15    Retention and Payment of Professionals by the Reorganized Debtor**. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay professionals in the ordinary course of business for purposes of implementing the Plan or for such other purposes it sees fit in its sole discretion. Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Reorganized Debtor, as well as Professional Claims arising after confirmation, shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation, reimbursements of expenses, or payment of administrative expenses shall be necessary or required unless a dispute arises in regard thereto; in the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

**Section 5.16    U.S. Trustee Fees and Reporting**. Debtor and the Reorganized Debtor, as appropriate, shall cause to be paid any and all fees of the Office of the United States Trustee as and when such fees become due, until this Bankruptcy Case is closed and a final decree is entered. In addition, the Reorganized Debtor will file all post-confirmation reports required by the United States Trustee's Office. Any outstanding fees owed to the U.S. Trustee as of the Effective Date shall be paid in full on the Effective Date. The U.S. Trustee statutory fees are calculated on a quarterly basis based upon Debtor's total distributions during the quarter.

## ARTICLE VI.  ACCEPTANCE OR REJECTION OF THE PLAN

**Section 6.01    Classes Entitled to Vote**. Each Impaired Class of Claims shall be entitled to vote to accept or reject the Plan. Each Unimpaired Class of Claims shall be deemed to have accepted the Plan and shall not be entitled to vote to accept or reject the Plan.

**Section 6.02    Claim Designations**. The Plan Proponent reserves the right to seek to designate, pursuant to § 1126(e) of the Bankruptcy Code, any vote cast by a Holder of a Claim whose vote on the Plan was submitted for an improper purpose or not in good faith.

## ARTICLE VII. PROVISIONS REGARDING DISTRIBUTIONS

**Section 7.01    Date of Distributions to Creditors**. Payments to Holders of Allowed Claims shall be paid as provided in Article IV of this Plan.

**Section 7.02    Distributions Only on Allowed Claims**. A Claim is in a particular Class and entitled to receive Distributions only to the extent it is an Allowed Claim, and only if and when such Claim becomes an Allowed Claim. A Claim that is ultimately a Disallowed Claim, or otherwise not entitled to any Distribution by settlement, compromise, untimely filing, or other order of the Bankruptcy Court shall not participate in the Distributions to be made under the Plan

**Section 7.03    Distributions to Holders as of the Record Date**. All Distributions on account of Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**Section 7.04    Delivery of Distributions**. All Distributions to a Holder of an Allowed Claim shall be made by the Disbursing Agent (a) to the address set forth on the proof of claim filed by such Holder, (b) to the address set forth in any written notices of address change delivered to the Debtor's undersigned counsel after the date of filing of any related proof of claim, (c) to the address reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of change of address, or (d) if the Holder's address is not listed in the Schedules and no proof of claim has been filed, at the last known address of such Holder according to the Debtor's books and records.

**Section 7.05    Creditors' Duty to Provide Address Updates**.  It shall be the responsibility of each Holder to maintain a current address with the Disbursing Agent by informing Debtor's undersigned counsel in writing of any address change. Providing such updated address information following any change of address shall be a condition precedent to receiving any Distributions under this Plan.

**Section 7.06    Interest on Claims**. Except as provided in a Final Order entered in the Bankruptcy Case, (a) no Holder of any Claim, other than the Holders of Priority Tax Claims and Allowed Secured Claims, shall be entitled to interest accruing on or after the Petition Date on such Claim,

and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**Section 7.07   Method of Payment**. All payments made pursuant to this Plan shall be by check or ACH or wire by the Reorganized Debtor, except the payment to AFC which shall be paid by wire from the Buyers' counsel.

**Section 7.08   Prepayment**. Unless the Plan or the Confirmation Order provides otherwise, the Reorganized Debtor shall have the authority to prepay, without penalty, all or any portion of an Allowed Claim at any time.

**Section 7.09   Setoffs**. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan on account of such Claim, claims of any nature whatsoever that Debtor, the Estate, or the Reorganized Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor, the Estate, or the Reorganized Debtor of any such claim that Debtor may have against such Holder of a Claim.

**Section 7.10   Unclaimed Property**.

(a)   Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within 90 days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property and (d) checks (and the funds represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

(b)   During the Claiming Period, Unclaimed Property shall be held solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released and delivered to such Holder upon presentation of proper proof by such Holder of its entitlement thereto.

(c)   In the event that there is Unclaimed Property with regard to any Claim, Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, retain all subsequent Distributions due with regard to such Claim.

(d)   After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied; provided, however, that the Claiming Period may be extended for the Holder of any Allowed Claim by agreement between the Claim Holder and the Debtor. At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed Property shall become the property of the Reorganized Debtor pursuant to § 347(b) of the Bankruptcy Code.

(e)  All parties entitled to participate in Distributions under this Plan shall be required to notify the Reorganized Debtor in writing of any change in the address to which Distributions are to be sent.

(f)  These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property.

**Section 7.11  Rounding**. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment made by the Reorganized Debtor may reflect a rounding of such fraction down to the nearest whole cent.

**Section 7.12  De Minimis Payments**. The Reorganized Debtor will not issue payments under this Plan on account of any Claim for which the Distribution would equal $20.00 or less.

## ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 8.01  Rejection**. Any executory contracts and unexpired leases that have not been previously assumed or rejected shall be deemed rejected on the Effective Date unless the Confirmation Order provides otherwise and if the Plan provides otherwise. Allowed Claims, if any, arising out of the rejection of executory contracts and unexpired leases shall be treated as Class 4 General Unsecured Claims, if not otherwise provided for with the consent of the parties and approval by the Bankruptcy Court.

**Section 8.02  Claims for Damages**. Each person who is a party to an executory contract or unexpired lease rejected by Debtor during the pendency of this Bankruptcy Case but prior to confirmation of this Plan must file its claim for damages, including requests for payment of Administrative Claims, by the applicable deadline(s) as previously established or to be established by the Bankruptcy Court, as appropriate. Any Claim resulting from the rejection of an Executory Contract not filed by the applicable deadline shall be discharged and forever barred and shall not be entitled to any Distributions under the Plan.  Debtor shall have the right to object to any rejection damage Claim.

**Section 8.03  Monitoring Contracts.** Debtor provides security monitoring services. As of the Filing Date, Debtor was providing monitoring service to one hundred twenty-five customers (the "**Monitoring Contracts**"). The Monitoring Contracts are listed on **Exhibit C** attached to the Amended Plan of Reorganization filed on September 11, 2025 [Doc. No. 131].  Debtor reserves the right to assume each of the Monitoring Contracts if the customer is current on its monitoring payments or monitoring installation costs as of the Effective Date of the Plan. If the customer is not current, Debtor reserves the right to reject any Monitoring Contract unless the customer cures the payment defaults under the Monitoring Contracts on or before the Effective Date of the Plan. If Debtor rejects one or any of the Monitoring Contracts, Reorganized Debtor may exercise all of its rights and remedies under applicable law to collect on any past due amounts and may remove its equipment from any customer's premises under the terms of the Monitoring Contracts. Any

customer to the Monitoring Contracts may file a proof of claim for damages arising from such rejection (a "**Monitoring Contracts Rejection Damages Claim**") and for any postpetition amounts incurred, but unpaid, by Debtor. Any timely filed Monitoring Contracts Rejection Damages Claim shall be subject to the claims allowance and dispute resolution procedures set forth in Article IX of the Plan. If, and to the extent, a Monitoring Contracts Rejection Damages Claim is determined to be an Allowed Claim, it shall be classified as a Class 3 General Unsecured Claim and shall be entitled to receive distributions under the Plan on a *pro rata* basis with all other Allowed Class 3 Claims.

**Section 8.04    Enterprise FM Trust.**  Debtor leases a fleet of vehicles from Enterprise FM Trust ("**Enterprise**") under the terms of a Master Equity Lease Agreement dated October 11, 2012 (the "**Enterprise Lease**"). Debtor is assuming the Enterprise Lease under this Plan. Debtor shall pay to Enterprise any prepetition past due amounts due and owing under the Enterprise Lease within thirty (30) days of the Effective Date of the Plan after Debtor and Enterprise reconcile amounts owing to Debtor, if any, under the Enterprise Lease. Debtor shall pay to Enterprise any postpetition past due amounts due and owing under the Enterprise Lease within thirty (30) days of the Effective Date of the Plan after Debtor and Enterprise reconcile amounts owing to Debtor, if any, under the Enterprise Lease. Enterprise may apply amounts due and owing to Debtor to satisfy any prepetition amounts or past due postpetition amounts owed to Enterprise by Debtor.

**Section 8.05 Wood Real Estate Investors LLC and Its Affiliates and Subsidiaries.**  Section 8.03 of the Plan, including Exhibit C cited therein, shall not apply to Wood Real Estate Investors LLC and its affiliates and subsidiaries (collectively, "**Wood**").  Debtor's assumption or rejection of any monitoring contract with Wood (each, a "**Wood Contract**," and collectively, the "**Wood Contracts**") shall be stayed and deferred until a final determination of any amounts owed by any party under the Wood Contracts has been made by the Bankruptcy Court or by written agreement between the Reorganized Debtor and Wood, with such determination being no less than forty-five (45) days after the Confirmation Hearing. Following the final determination of any amount owed under a Wood Contract, the Reorganized Debtor shall have fourteen (14) days to assume or reject such Wood Contract and if such Wood Contract is assumed, the parties shall have an additional fourteen (14) days thereafter, or such other time as agreed upon between Reorganized Debtor and Wood, to pay any amounts determined to be owed under such Wood Contract. The parties shall have the right to apply any obligation owing under a Wood Contract against any amount owed with respect to any other Wood Contract in accordance with applicable law, notwithstanding any contrary provision in the Plan. If Reorganized Debtor rejects any Wood Contract, Wood may file a proof of claim for damages arising from such rejection (a "**Wood Rejection Damages Claim**") and for any amounts incurred, but unpaid, by the Debtor after the Petition Date. Any timely filed Rejection Damages Claim shall be subject to the claims allowance and dispute resolution procedures set forth in Article IX of the Plan. If, and to the extent, a Rejection Damages Claim is determined to be an Allowed Claim, it shall be classified as a Class 3 General Unsecured Claim and shall be entitled to receive distributions under the Plan on a *pari passu* basis with all other Allowed Class 3 Claims, notwithstanding any provision of the Plan to the contrary.

**Section 8.06    Classification of Claims**. Allowed Claims arising out of the rejection of executory contracts and unexpired leases shall be Class 3 General Unsecured Claims.

## ARTICLE IX.  ALLOWANCE OF CLAIMS

**Section 9.01    Allowed Claims**. An "Allowed" Claim for purposes of the Plan means any one of the following:

(a)  If no objection is filed by Debtor or Reorganized Debtor to a proof of claim on or before the Claims Objection Deadline (as extended, if applicable), such Claim shall be deemed an Allowed Claim, of the type and in the amount set forth in such request or proof of claim; or

(b)  If Debtor or Reorganized Debtor files an objection to such request or proof of claim, then such Claim shall be an Allowed Claim of the type and to the extent provided in (i) a subsequent Final Order of the Bankruptcy Court or (ii) a stipulation agreed upon by the Debtor, and shall thereafter be treated in accordance with the provisions of such order or stipulation and the Plan.

**Section 9.02    Disallowed Claims**.  A Disallowed Claim is a Claim or any portion thereof that: (i) is not an Allowed Claim or a Disputed Claim, (ii) has been disallowed by a Final Order of the Bankruptcy Court; (iii) is listed in any of Debtor's Schedules at $0.00, unknown, contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court; or (iv) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim timely filed or deemed timely filed with the Bankruptcy Court.

**Section 9.03    Disputed Claims**. A Disputed Claim is a Claim or any portion thereof that is not an Allowed Claim or a Disallowed Claim, and which is the subject of an objection timely filed with the Bankruptcy Court and which objection has not been withdrawn, settled, or overruled by a Final Order of the Bankruptcy Court.

**Section 9.04    Scheduled Claims**. With respect to any claims against Debtor that are listed in Debtor's Schedules, and the Holder of such Claim has not filed a proof of claim, the following shall apply:

(a)  If such claim is not shown in Debtor's Schedules as disputed, unliquidated, or contingent, and if Debtor has not filed an objection to said claim, then such claim shall be deemed an Allowed Claim, of the type and in the amount shown on such Schedules;

(b)  If such claim is shown in Debtor's Schedules as disputed, contingent, and/or unliquidated, then such claim shall be a Disallowed Claim and disallowed in its entirety; or

(c)  If such claim is not shown in Debtor's Schedules as disputed, unliquidated, or contingent, but Debtor has timely filed an objection to such claim, the claim shall be a Disputed Claim until such time that it becomes an Allowed Claim and/or a Disallowed Claim.

**Section 9.05   Claims Objection Deadline**. All objections to Claims must be filed no later than the Claims Objection Deadline, subject to any extension granted by further order of the Bankruptcy Court.

**Section 9.06   Claims Allowed After the Effective Date**. To the extent that any Claim becomes an Allowed Claim after the Effective Date, its Holder will be paid its Distribution in Cash within in accordance with payments made to Allowed Claims in the same Class as the Allowed Claim after the Effective Date.

**Section 9.07   Resolution of Claims Objections**. On and after the Effective Date, Debtor shall have the authority to compromise, settle, or withdraw any objections to Claims, or otherwise resolve any Disputed Claims, without further approval of the Bankruptcy Court**.**

**Section 9.08   Adjustment of Claims and Treatment**. Debtor and the Reorganized Debtor shall be authorized, empowered, and permitted subsequent to the Confirmation Date to enter into an agreement or agreements with any creditor providing for payment or treatment of such creditor's Claim upon terms other than those provided in this Plan without further order of the Bankruptcy Court; provided, however, that no such agreement or agreements shall provide for payment or treatment of such creditor's Claim upon terms more favorable to such creditor than the payment or treatment provided for such creditor in this Plan.

**Section 9.09   Administrative Claims Bar Date**. To the extent that any party asserts an Administrative Claim that has not been paid in full by the Effective Date, such party shall file a motion for allowance and payment of such Claim no later than the Administrative Claims Bar Date. Failure of any party to file such a motion prior to the Administrative Claims Bar Date shall entitle the Debtor to presume that no such Claim exists and will result in any such Claim being discharged, unless the Bankruptcy Court orders otherwise after notice and a hearing. The Administrative Claims Bar Date shall not apply to Professional Claims.

**Section 9.10   No Interest on Claims**. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between Debtor and a Holder, post-petition interest shall not accrue or be paid on any Claims, including any Disputed Claim that later becomes an Allowed Claim, and no Holder shall be entitled to any interest accruing on or after the Petition Date with respect to any Claim except as specifically provided in this Plan.

**Section 9.11   No Admissions; Objection to Claims**. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity designated as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting on the Plan shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

**Section 9.12   No Distributions Pending Allowance**. Except as otherwise provided in the Plan, no Distributions will be made on account of any Claim or portion thereof that is a Disputed Claim unless and until such Claim becomes an Allowed Claim.

## ARTICLE X.  CONDITIONS PRECEDENT

**Section 10.01 Conditions to Confirmation**. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with section 10.03 of this Plan:

(a) The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to Debtor in its sole and absolute discretion;

(b) The Buyers shall have deposited into the Buyers' counsel's IOLTA within five days before the Confirmation Hearing the sum sufficient to pay AFC's Class 1 Claim in full; and

(c) The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Case.

**Section 10.02  Conditions to the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with section 10.03 of this Plan:

(a) The Confirmation Order shall not have been vacated, reversed, or modified and, as of the, shall not be stayed; and

(b) All documents and agreements to be executed on the Closing Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to both Debtor and Buyers in their reasonable discretion pursuant to the terms of the Plan.

**Section 10.03  Waiver of Conditions to Confirmation or Effectiveness**. The conditions set forth in section 10.01, as to Debtor, and section 10.02 of this Plan, as to Debtor and Reorganized Debtor, may be waived, in whole or in part, by the Debtor without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI.  EFFECT OF PLAN CONFIRMATION

**Section 11.01 Binding Effect**. On and after the Closing Date, and following confirmation by the Bankruptcy Court, the Plan shall be legally binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, the Holders of Claims, the Holders of Equity Interests, and their respective successors and assigns, even if they voted to reject the Plan.

**Section 11.02 Vesting of Property in Reorganized Debtor**. Pursuant to 11 U.S.C. § 1141(b), confirmation of this Plan vests all remaining property of the Estate with the Reorganized Debtor as of the Closing Date. Except as otherwise explicitly provided in the Plan, on the Closing Date, all property comprising the Estate (excluding property that has been abandoned pursuant to an

order of the Bankruptcy Court) shall vest in Reorganized Debtor as of the Closing Date, free and clear of all Claims, liens, charges, encumbrances, rights and interests of creditors, except as specifically provided in the Plan.

**Section 11.03  Reorganized Debtor's Right to Operate Unsupervised**.  As of the Closing Date, the Reorganized Debtor may manage its operations and use, acquire, and dispose of property and settle and compromise Claims without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**Section 11.04  Buyers Not a Successor to Debtor.** The Buyers are not successors to Debtor or its bankruptcy estate by reason of any theory of law or equity, and Reorganized Debtor and Buyers shall not assume or in any way be responsible for any liability of Debtor and/or its Estate, except as otherwise expressly provided in the Stock Purchase Agreement and the Plan. Subject to the terms and conditions of the Plan and the Stock Purchase Agreement, the Buyers and Reorganized Debtor shall have no liability for any debt or other obligation related to the Equity Interests of the Stallings before the closing of the Sale Transaction. The Buyers shall not be liable for any Claims against Debtor and the Buyers shall not have any successor or vicarious liability of any kind, whether known or unknown on the closing of the Sale, with respect to Debtor or any obligations of Debtor arising before the Closing of the Stock Purchase Agreement, except as stated in the Stock Purchase Agreement and in the Plan..

**Section 11.05  No Pre-Closing Liability.** The issuance of the Reorganized Debtor's Equity Interests pursuant to the Stock Purchase Agreement shall not subject the Buyers to any liability with respect to Debtor's Business before the Closing of the Stock Purchase Agreement or by reason of such transfer under the Bankruptcy Code or applicable federal and state law, including any theory of equitable subordination or successor or transferee liability.

**Section 11.06  Discharge.**      Pursuant to § 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan to Holders of Allowed Claims shall be in complete satisfaction, discharge, and release of all Claims, whether known or unknown, against the Debtor, the Estate, or the Reorganized Debtor. The Reorganized Debtor will not have any liabilities related to any Claims except those expressly assumed under this Plan.   Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against Debtor or Estate Property, and termination of all Equity Interests.   Except as provided in the Plan or the Confirmation Order, on the Closing Date: (a) Debtor shall be discharged from all Claims or other debts that arose before the Closing Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i), regardless of whether (i) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code section 501; (ii) a Claim based on such debt is Allowed under Bankruptcy Code section 502; or (iii) the holder of a Claim based on such debt has accepted the Plan; and (b) all Equity Interests and other rights of Equity Interests in Debtor shall be terminated, except for the Reorganized Debtor Equity Interests.   Except as

25

otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of Debtor arising before the Effective Date. Under § 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against Debtor at any time obtained (to the extent it relates to a discharged Claim) and operates as an injunction against the prosecution of any action against Debtor and Reorganized Debtor and of Estate Property.

**Section 11.07 Injunction**. The Confirmation Order shall act as an injunction during the term of this Plan. The injunction shall terminate as to a creditor if a payment default occurs as to such creditor as provided under the Plan. Except for actions expressly provided for in this Plan, such bars any Person from commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim provided for under this Plan against Debtor or Reorganized Debtor or against any property of Debtor or Reorganized Debtor or any property otherwise pledged as collateral against such Claim provided for under this Plan in any jurisdiction whatsoever, except as provided for in this Plan. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

**Section 11.08 Exculpation.** Subject to the occurrence of the Effective Date, Debtor and professionals retained for Debtor's Bankruptcy Case (collectively, the "**Exculpated Parties**") shall not have or incur any liability to any holder of a claim or equity interest in Debtor's Bankruptcy Case for any act or omission that occurred between and including the Petition Date through the Effective Date in connection with, related to, or arising out of, the drafting and negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, the foregoing will not operate as a waiver or release for (i) willful misconduct, intentional torts, or gross negligence, and (ii) with respect to professionals retained for Debtor's Bankruptcy Case, liability arising from claims of professional negligence which will be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law; provided further that nothing in the Plan will, or will be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further the foregoing will not operate as a waiver or release of claims by governmental entities arising under environmental laws.

**Section 11.09 Exemption from Certain Transfer Taxes and Recording Fees**. Pursuant to § 1146 of the Bankruptcy Code, any transfer from the Debtor or the Reorganized Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the real or personal property held by the Debtor or Reorganized Debtor will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

**Section 11.10 Good Faith.** Confirmation of the Plan shall constitute a finding that (a) the Plan has been proposed in good faith and in compliance with the provisions of the Bankruptcy Code and (b) the solicitation of acceptances or rejections of the Plan by all Persons and the offer,

issuance, sale, or purchase of any security offered or sold under the Plan has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## ARTICLE XII.  GENERAL PROVISIONS

**Section 12.01 Headings**. The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**Section 12.02 Notices**. Any notice required or permitted to be provided to the Reorganized Debtor under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

To Reorganized Debtor:
CoLiant Solutions, Inc.
Mr. Joel Anaya
1770 Old Bayshore Hwy.
San Jose, California 95112


with a copy to:
Ceci Christy
Rountree Leitman Klein & Geer, LLC
2987 Clairmont Road
Suite 350
Atlanta, GA 30329

Should either the Reorganized Debtor or its counsel's address change, the applicable party shall notify in writing creditors then receiving payments under the Plan.

**Section 12.03 Amendments and Modifications**. This Plan may be altered, amended, or modified by Debtor at any time, subject, however, to § 1127 of the Bankruptcy Code. This Plan may not be altered, amended, or modified without the written consent of Debtor. Debtor may withdraw this Plan at any time.

**Section 12.04 Revocation of Plan**. Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to the entry of the Confirmation Order, and upon such revocation and/or withdrawal, this Plan shall be deemed null and void and of no force and effect.

**Section 12.05 Conflicts with Disclosure Statement**. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**Section 12.06 Retention of Property of the Estate**. Except to the extent disposed of in accordance with the provisions of this Plan, the Reorganized Debtor shall retain all of the property of the Estate within the meaning of § 541 of the Bankruptcy Code.

**Section 12.07 Severability**. If any section or provision of this Plan is found to be contrary to law or unenforceable, then at the option of the Reorganized Debtor, such section or provision shall be deemed no longer a part of this Plan.

**Section 12.08 Continuation of all Retiree Benefits**. To the extent applicable to the Reorganized Debtor, all retiree benefits, as that term is defined in § 1114 of the Bankruptcy Code, shall be continued in accordance with § 1129(a)(13) of the Bankruptcy Code.

**Section 12.09 Tax Consequences**. Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Equity Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Equity Interest are represented, implied, or warranted. The Plan Proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Equity Interest. Holders of Claims or Equity Interests are strongly urged to consult their own tax advisors covering the federal, state, local, and/or foreign tax consequences of the Plan to their individual situation.

**Section 12.10 Applicable Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

**Section 12.11 Retention of Jurisdiction by the Bankruptcy Court**. Until this Bankruptcy Case is closed and a final decree issued, the Bankruptcy Court shall retain jurisdiction over all matters arising out of or relating to this Bankruptcy Case, including, but not limited to, the following matters:

(a)  To determine the allowance or classification of Claims or Equity Interests under this Plan and to determine any objections thereto;

(b)  To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

(c)  To determine all applications for allowance of compensation or reimbursement of expenses;

(d)  To determine any other request for payment of Administrative Claims;

(e)  To resolve any dispute regarding the implementation or interpretation of this Plan;

(f)  To determine any and all motions pending as of the Confirmation Date for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(g)  To determine all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(h)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(i)  To modify the Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purpose;

(j)  To enter an order or final decree closing this Bankruptcy Case;

(k)  To determine matters under § 505 of the Bankruptcy Code relating to any tax for which the Reorganized Debtor may be liable;

(l)  To consider and act on the compromise and settlement of any claim against the Debtor or Debtor-in-Possession or its Estate;

(m)  To determine all questions and disputes regarding title to the assets of the Debtor, Debtor-in-Possession, the Estate, or the Reorganized Debtor; and

(n)  To construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Bankruptcy Court at or prior to Confirmation.

**Section 12.12 Final Decree**. The Bankruptcy Court may, upon application of the Reorganized Debtor, at any time after "substantial consummation" of the Plan as defined in § 1101(2) of the Bankruptcy Code, enter a final decree in the Bankruptcy Case, notwithstanding the fact that additional funds may eventually be distributed to parties-in-interest. In such event, the Bankruptcy Court may enter an order closing this Bankruptcy Case pursuant to § 350 of the Bankruptcy Code; provided, however, that (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may, from time to time, reopen the Bankruptcy Case if appropriate for any of the following purposes: (i) administering Assets; (ii) entertaining any adversary proceedings, contested matters; or applications Debtor has brought or will bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (iii) enforcing or interpreting this Plan or supervising its implementation; or (iv) for other cause. The Reorganized Debtor shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen the Bankruptcy Case shall be waived, and the Reorganized Debtor shall not be responsible for payment of such to the clerk of the Bankruptcy Court.

Dated: October 30, 2025

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy_____*

Ceci Christy, Ga. Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **In Re:** | **CASE NO.  25-51509-PWB** |
| **COLIANT SOLUTIONS, INC.,** | **CHAPTER 11** |
| **Debtor.** | |

### DECLARATION OF CECI CHRISTY

I, Ceci Christy, state and declare under penalty of perjury that the following is true and correct:

1.

I am an attorney licensed to practice in Georgia with Bar No. 370092.

2.

I make this Declaration in support of Debtor CoLiant Solutions, Inc.'s ("**Debtor**") Third Amended Plan of Reorganization (the "**Plan**") with regard to Section 4.01 Administrative Claims - Postpetition Vendor Payables.

3.

I called each of the postpetition vendors who performed work or provided services or provided goods to Debtor from February 13, 2025 through October 29, 2025 who were not paid. I spoke with a representative of each vendor and explained that Debtor's Plan of reorganization provides for payment of their postpetition administrative claim in full but in two payments.  The first 50% payment will be paid on the Effective Date of the Plan as defined in the Plan and is anticipated to be on or about December 20, 2025. The second and final 50% payment under the Plan will be paid on or before November 20, 2026.

4.

Attached to this Declaration is a spreadsheet of the outstanding postpetition vendors who

expressed their approval of the two equal payments as provided for in the Plan.

This 30th day of October 2025.

_/s/ Ceci Christy_____

Ceci Christy
Georgia Bar No. 370092

| Company name: | CoLiant Solutions | | |
| Report name: | Vendor aging report | | |
| As of date: | 10/30/25 | | |
| **Vendor ID** | **Vendor name** | **Total** | |
| 1409 | Acadian Monitoring Services | 87,780.00 | approval 10/22 10:04 AM |
| 1157 | Avigilon USA Corporation | 1,983.53 | approval 10/21 4:50 PM |
| 2040 | Batteries Plus | 26,096.75 | approval 10/24 2:06 PM |
| 42 | Cabling Solutions, LLC | 51,836.00 | approval 10/17 3:35 PM |
| 1500 | Chief Facility Defense (CFD) | 4,230.00 | approval 10/21 4:57 PM |
| 758 | CT Communications | 17,175.00 | approval 10/22 1:22 PM |
| 1515 | Eunitel, Inc. | 40,709.93 | approval 10/20 1:22 PM |
| 1071 | Fehring Ornamental Ironworks | 45,897.70 | approval per agreement |
| 2126 | H&E Equipment Services | 30,585.37 | approval 10/21 1:15 PM |
| 2039 | Install Subs LLC | 6,750.00 | approval 10/17 9:15 AM |
| 1213 | Kwasigroch Electric | 8,300.00 | approval 10/21 2:45 PM |
| 646 | LHI, LLC | 27,149.88 | approval 10/21 4:41 PM |
| 115 | MCS General Construction | 10,000.00 | approval 10/21 4:55 PM |
| 2101 | Quality Touch Cabling | 7,200.00 | approval 10/24 1:05 PM |
| 1597 | Safe Security Solutions | 51,340.00 | approval 10/23 10:49 AM |
| 822 | SignalNet Communications, Inc. | 69,739.32 | approval 10/17 4:35 PM |
| 844 | Sunbelt Rental | 61,352.65 | approval 10/21 9:40 AM |
| 1644 | Trusted Tech Team | 4,919.40 | approval 10/21 4:14 PM |
| 2030 | United Rentals - WM | 35,259.59 | approval 10/20 10:25 AM |

**588,305.12**